IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH KNIGHT COX,

    Petitioner,        No. CIV S-08-2107 LKK KJM P

  vs.

JAMES A. YATES,

    Respondent.      FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a California prisoner proceeding pro se with an application for writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges his 2006 Yolo County convictions and sentences for several sex offenses.

I. <u>Standards For Habeas Relief</u>

        An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Also, federal habeas corpus relief is not available for any

/////

/////

/////

/////

1

claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA").[1] It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d). See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002). A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth

---

[1] Title 28 U.S.C. § 2254(d) establishes a precondition to federal habeas relief, not grounds for entitlement to habeas relief. Fry v. Pliler, 127 S. Ct. 2321, 2326-27 (2007).

2

in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S. 919 (2003). Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). In other words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law.

"Clearly established" federal law is that determined by the Supreme Court. Arredondo v. Ortiz, 365 F.3d 778, 782-83 (9th Cir. 2004). At the same time, it is appropriate to look to lower federal court decisions as persuasive authority in determining what law has been "clearly established" and the reasonableness of a particular application of that law. Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999); Clark v. Murphy, 331 F.3d 1062 (9th Cir. 2003), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003); cf. Arredondo, 365 F.3d at 782-83 (noting that reliance on Ninth Circuit or other authority outside bounds of Supreme Court precedent is misplaced).

II. Background

On direct appeal, the California Court of Appeal summarized the facts presented at petitioner's trial as follows:

> Between July 2001 and November 2003, defendant lived with D.B. in Knights Landing with their infant daughter A. and D.B.'s three young children from a prior marriage, E.G., K.G., and H.G. Defendant and D.B. were married on March 16, 2002, after A. was born. During the time they lived together, defendant took care of the children while D.B. was at work.
>
> E.G.
>
> E.G. was born in September 1994. One time when she was about seven and one-half or eight years old, she was playing with H.G. when defendant entered the room. H.G. left but when E.G. tried to leave too, defendant barred her exit and put his hands down her

underpants and touched her "private part" on her skin. Defendant touched her the same way on another occasion when she was approximately eight years old, although this time he touched her over her clothing.

K.G.

K.G. was born in May 1996 and was between the ages of five and six when he lived with his mother and defendant. On two occasions in the daytime during that time, defendant played a "tent" game with K.G. and his sisters on the bed in D.B.'s bedroom. The children were clothed and defendant was naked except for a blanket that was draped over him while he bent over on his hands and knees. K.G. lay beside defendant partially covered by the blanket with his arm touching defendant's arm, while his two sisters crawled on their stomachs between defendant's arms and legs, trying not to touch defendant's penis. The girls went through the tent twice on one day and two or three times on the other day.

On another occasion when H.G. was three years old, K.G., H.G. and E.G. took a bath with defendant. They were all in the bathtub together and H.G. saw defendant's penis and defendant's feet touched K.G. E.G. told her mother that she and her two siblings took a bath with defendant. Sometime in the summer of 2003, K.G. told D.B. that he and his sisters took a bath with defendant and the following day, she told defendant to leave the residence.

H.G.

H.G., who was born in March 1998, lived primarily with her biological father and stepmother, and her brothers K.G. and J., but she visited her mother and defendant occasionally. One day when she was about three years-old and was visiting her mother and defendant, defendant touched her vagina with his hand and put his finger "two inches" inside her "peepee" and moved his hand, which felt "bad." This first incident took place before A. was born in February 2001.

Defendant touched her that way "a lot," meaning more than three times and K.G. and E.G. were in the room during at least one of the incidents. The last time defendant touched her was when she was in kindergarten.

On June 14, 2002, after one of her visits with her mother and defendant, H.G.'s stepmother was bathing her when she complained of a rash on her vaginal area. Her stepmother noticed she was having a lot of rashes and asked whether anyone had touched her private parts. H.G. became quiet and looked confused and uncomfortable, but upon further questioning, told her stepmother defendant rubbed her vaginal area with his fingers.

4

M.

M. was born in June 1997 and is the daughter of T.D. and defendant. Prior to the birth of her brother T., born January 2005, M. lived in an apartment in Woodland with defendant, her mother and her brother K.

On May 17, 2004, M. spoke to Debbie Presti, a social worker with the Yolo County Child Protective Services unit, in her apartment where she lived with her parents. At that time, M. told Presti defendant had "done a bad touch on her butt" in her mother's bedroom in the yellow house.

The following day, Presti conducted a formal multi-disciplinary interview with M. During that interview, M. told Presti defendant touched her "butt" by placing his fingers insider her "butt," which she identified as her vagina, and also touched her butt with his foot. M. said she saw defendant's penis, which she called a "wienie," when he was naked and acting "strange" or "crazy." She ran away from him because it was "gross." She explained that his penis touched her hand "a tiny bit" when he made her touch it and that "a tiny drop of . . . pee" came out. She described his penis as "a little hard and a lot of softness" and said it touched her hand 10 times when she was approximately four years old.

M. told Presti that when she was five years old and before she was in kindergarten, while she and her family were living in the yellow house, defendant put his penis in her "butt," pointing to her rectum and vagina. M. said the touchings occurred in a lonely place that no one could find but when asked where it was, she said "you just go across the street and . . . you go past Wal-mart and then you'll see it right there." She did not tell her mother about these touchings because defendant told her not to tell and she thought she would get in trouble with defendant.

Uncharged Offenses

C.S., who was born in December 1977 and is defendant's younger sister, testified that when she was between seven and 14 years of age, she lived with defendant and her parents. During that time, defendant touched her with his hand and his penis in her vaginal area both under and over her clothing. When he used his hand, he only touched the outside of her vagina but when he used his penis he would occasionally insert it into her vagina. The touchings would last about five minutes.

The first touching took place in the bathroom of their home when C.S. was seven and defendant was 12. He touched her with his hand about 20 times and he inserted his penis into her more than three times.

5

> As C.S. grew older and understood about sexual intercourse, she asked defendant to stop because she did not want to get pregnant. When she was 13 years old, her parents discovered that defendant had been molesting her and her father spoke to defendant but defendant continued to molest her. She never reported the molestations to the police and was angry with defendant for a period of time. However, she has since forgiven him and when they spoke about what he had done to her, he thanked her for forgiving him and told her he was very sorry for what he had done.
>
> Defense
>
> Defendant took the stand and denied committing all of the charged acts. He testified that D.B.'s children did not get along, that E.G. was a bully who would slap H.G., and there were times when he had to spank E.G. and K.G. as a disciplinary measure.
>
> Concerning the bathtub incident, defendant explained that he was taking a bath by himself when the three children came into the bathroom and proceeded to undress themselves and then tried to climb into the bathtub. Defendant was embarrassed and jumped out of the tub, wrapped a towel around himself, and got dressed. E.G. was just stepping into the tub as he was about to get out, but he was never in the bathtub with all three children at the same time.
>
> Defendant categorically denied touching H.G. inappropriately at any time, playing a "tent" game with K.G. or the other children, or taking off his clothes while the children were playing around him. He also denied touching M.'s private parts, touching her inappropriately, or being naked in her presence.
>
> He admitted laying on top of his sister but denied ever putting his penis inside her. He testified that he did not know that type of behavior was wrong until he was about 12 or 13 years old and his father spoke to him about sexual matters. He now thinks that conduct is unacceptable.

Opinion of Third District Court of Appeal filed Sept. 5, 2007 (Resp't's Lodged Doc. #4) (Op.) at 3-9 (footnotes omitted).

III. Arguments And Analysis

   A. Crying Juror

In his first claim, petitioner asserts the trial court violated his Constitutional right to a fair trial by failing to explore the partiality of one of the jurors, juror no. 7, after she was seen

/////

crying in the hallway subsequent to hearing H.G. testify.[2] Pet. at 7-15.[3] This claim, as with all of petitioner's claims, was presented on direct appeal in the California Court of Appeal. The Court of Appeal did not directly address petitioner's Constitutional claim. Instead, the court addressed the state law aspects of the claim. The Court of Appeal summarized the facts relevant to petitioner's first claim as follows:

> On the first day of trial, following the lunch recess, defense counsel advised the court that when he left the courtroom at the noon break, he noticed juror No. 7 sitting in the hall "crying strenuously." It concerned him, so he informed the prosecutor and was informed the court was in possession of a written note from that juror. When counsel left the courtroom again, the juror was still in the hallway "crying hard." Counsel told the court he had concerns about whether the juror could be fair and impartial based upon her strong reaction so early in the case when the first witness had not even completed her testimony.
>
> The trial court advised counsel it had in fact just received a note from the juror and read the note into the record as follows: "How is asking [the child witness] to talk about privates in front of a room full of strange adults an okay practice? Is this really the right thing to do? It seems cruel."
>
> The court denied counsel's request to replace the juror, unless she communicated with the court and indicated she was unable to proceed in this case. However, the court indicated it would speak to the jury about the tension between the formality of a trial and the informality it would normally use in communicating with minors.
>
> H.G., who had been testifying at the time, resumed the witness stand and at the conclusion of her testimony, the court addressed the jury. The court spoke about the problem of having young children testify in court about sexual matters, explained that in the past, child witnesses did not pose a problem because children were considered incompetent to testify, but now that they are allowed to testify, courts must struggle with the question of making the courtroom child friendly while protecting defendants' rights. The court indicated that it had advised counsel it would waive some of

---

[2] Petitioner also argues that the trial court violated California law by not delving further into whether juror no. 7 could be impartial. Pet. at 10-14. However, the court cannot grant petitioner relief for this asserted violation of state law, nor any of the other violations of state law petitioner alleges in his habeas petition, because habeas relief can only be granted for a violation of federal law. 28 U.S.C. § 2254(a).

[3] Page references are to those assigned by the court's CM/ECF system.

7

> the formalities and take more frequent breaks and if it sees "that a child is exceedingly uncomfortable, we may give the child five or ten minutes to calm down." The court reassured the jury "none of us here in the courtroom are trying to make the process any more difficult than it is," acknowledged that it is difficult for the witnesses and for everyone involved and "to bear with us as we march through this."

Op. at 9-11.

The Supreme Court has never found that a trial judge must conduct an inquiry as to bias when presented with circumstances resembling those in this case. The Ninth Circuit recognized as much in Sims v. Rowland, 414 F.3d 1148, 1153 (9th Cir. 2005). In Sims, a habeas petitioner argued that, under the Due Process Clause of the Fourteenth Amendment, he was entitled to an evidentiary hearing concerning juror bias when some jurors informed the court they were afraid of the possibility petitioner had become aware of their personal information, such as their addresses, during voir dire. Id. at 1149-50. The Ninth Circuit rejected this argument based in part on the fact that the Supreme Court has never found "that a failure to investigate potential juror bias presents structural error," which would entitle a habeas petitioner to relief regardless of a showing of prejudice. Id. at 1153.

In light of the foregoing, petitioner's first claim is barred by 28 U.S.C. § 2254(d). The adjudication of his claim in state court did not result in a decision that is contrary to, or involves an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, nor is the decision based on an unreasonable determination of the facts in light of the evidence presented in the state court.

B. Testimony Of Petitioner's Sister

As indicated above, petitioner's sister testified that petitioner committed several inappropriate and unwanted sex acts upon her. Petitioner claims the testimony deprived him of a fair trial in violation of the Due Process Clause of the Fourteenth Amendment. Pet. at 16-26. Petitioner focuses on the "substantially different" and inflammatory nature of the uncharged acts his sister described, namely that he engaged in sexual intercourse with her. In contrast, he says

none of the children who testified at his trial said he forced them to have sexual intercourse. Pet. at 16-17.

Petitioner fails to explain exactly how the evidence deprived him of a fair trial. To the extent petitioner argues that the evidence should not have been admitted because it does nothing more than show petitioner has a propensity for committing the crimes charged, petitioner is precluded from obtaining relief by 28 U.S.C. § 2254(d) because the Supreme Court has never held that propensity evidence is unconstitutional. See Estelle v. McGuire, 502 U.S. 62, 75 n. 5 (1991) (Court declined to rule on the constitutionality of propensity evidence).

Petitioner seems to suggest the court must analyze his claim under Chapman v. California, 386 U.S. 18 (1967), but the Chapman harmless error standard is not applicable in this action. In Brecht v. Abrahamson, 507 U.S. 619, 637 (1993), the Supreme Court found that, in an action filed under 28 U.S.C. § 2254, the appropriate level of prejudice that must be shown for a violation of a Constitutional right – when prejudice must be shown – is "substantial and injurious effect or influence in determining the jury's verdict."

In any event, admission of evidence violates the Due Process Clause of the Fourteenth Amendment only if there are no permissible inferences the jury can draw from the evidence. Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005). Here, it was permissible for jurors to infer that petitioner's prior conduct with his sister made it more likely that he committed the crimes charged. While "propensity" evidence is not always allowable under the Due Process Clause, exceptions have been made for sex offense cases as long as the probative value of the evidence is not far outweighed by prejudicial effect. See United States v. LeMay, 260 F.3d 1018, 1025-26 (9th Cir. 2001). For the reasons stated by the Court of Appeal in response to petitioner's claim concerning the testimony of his sister, the probative value of the testimony of petitioner's sister was not far outweighed by prejudicial effect. See Op. at 18-21. Therefore, petitioner's second claim must be rejected.

/////

C. <u>Sentence</u>

    1. <u>Sentence Longer Than Authorized By State Statute</u>

Petitioner makes several arguments regarding his sentence. First, petitioner claims his sentence violates the Due Process Clause of the Fourteenth Amendment because it is longer than a sentence authorized by state statute. Pet. at 25-29 (citing <u>inter alia</u> <u>Wasko v. Vasquez</u>, 820 F.2d 1090, 1091 n.2 (9th Cir. 1987)).

Petitioner was sentenced, among other things, to three consecutive terms of fifteen-years-to-life imprisonment on counts 8, 14 and 15. CT 678. The sentences were imposed based on the version of California Penal Code § 667.61(b) in effect between 1998 and 2006.[4] RT 985:11-986:2 That statute read as follows:

> . . . [A] person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 15 years . . .

Cal. Pen. Code § 667.61(b). With respect to count 8, petitioner was found guilty of committing a lewd and lascivious act on M.D. as defined in California Penal Code § 288(a). CT 632. As for counts 14 and 15, petitioner was found guilty of committing § 288(a) lewd and lascivious acts upon H.G. CT 639, 641. Committing a § 288(a) lewd and lascivious act is an offense "specified" in subdivision (c)(7) of California Penal Code § 667.61,[5] and one of the circumstances "specified" in subdivision (e) of § 667.61(e)(5) is that "the defendant has been convicted in the present case or cases of committing an offense specified in subdivision (c) against more than one victim."

---

[4] All references herein to California Penal Code § 667.61 are to the version in effect between 1998 and 2006.

[5] California Penal Code § 667.61(c)(7) read as follows: "A violation of subdivision (a) of Section 288, unless the defendant qualifies for probation under subdivision (c) of Section 1203.066." Petitioner does not allege that he qualified for probation under California Penal Code § 1203.066(c).

Petitioner claims the sentence enhancements imposed under § 667.61(b) are invalid because certain facts supporting the enhancements had to be explicitly pled and they were not. California Penal Code § 667.61(I) required that "[f]or any of the penalties provided in [§ 667.61] to apply, the existence of any fact required under subdivision . . . (e) shall be alleged in the accusatory pleading. . ." Therefore, for petitioner to have been eligible for the enhancements he in fact received, the charging documents had to explicitly indicate that enhancements under § 667.61(b) were applicable because petitioner committed an offense specified in subdivision (c) of § 667.61, that is, lewd and lascivious conduct, and the offense was committed under a circumstance specified in subdivision (e) of § 667.61, that is, that petitioner committed the offense against more than one victim. See People v. Mancebo, 27 Cal.4th 735, 743-45 (2002).

The Court of Appeal agreed that the multiple victim enhancement was not pled in compliance with § 667.61. However, the court affirmed petitioner's sentence, finding that any error was harmless because: 1) petitioner was informed in the charging documents that the state would seek to have his sentence enhanced under California Penal Code § 667.61(b), see CT 37-38, and the multiple victim basis for the enhancement was the only basis that could make the § 667.61(b) enhancement apply; and 2) the record does not suggest that petitioner would have presented any defense other than the one he presented if he had been explicitly charged with the multiple victim enhancement. Op. at 34-35. What the Court of Appeal failed to recognize is that because the § 667.61(b) enhancement was not adequately pled for purposes of § 667.61, petitioner was deprived of his Constitutional right to be sentenced to a term of imprisonment only to the extent authorized by state statute. See Wasko, 820 F.2d at 1091 n.2. Section § 667.61(I) provides that the § 667.61 enhancements can only apply if certain requirements are met and they were not.

Moreover, applying 28 U.S.C. § 2254(d), Supreme Court authority clearly establishes that a person convicted of a crime has a right to a sentence that is no longer than one

authorized by statute.  See Board of Pardons v. Allen, 482 U.S. 369, 381 (1987) (failing to grant inmate parole when required by statute violates due process); Hicks v. Oklahoma, 447 U.S. 343, 346 (1980) (where state statute provides for imposition of sentence in discretion of the jury, it is a violation of due process to take discretion away from jury); Whalen v. United States, 445 U.S. 684, 690 (1980) (District of Columbia defendant denied due process when he was ordered to serve consecutive sentences because Congress had not authorized imposition of consecutive sentences).  Section 2254(d) does not act as a bar to habeas relief because the California Supreme Court's and Court of Appeal's rejection of petitioner's claim concerning the § 667.61(b) enhancement is contrary to the Supreme Court precedent identified above.

For the reasons identified above, the court will recommend that petitioner's sentences on Counts 8, 14 and 15 be vacated and this matter be remanded to the Superior Court of Yolo County for re-sentencing.

### 2. Apprendi

Petitioner's second claim regarding his sentence is that the § 667.61(b) enhancements should be struck because the jury never explicitly found that the enhancements applied, in violation of Apprendi v. New Jersey, 530 U.S. 466 (2000).  In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt."  Id. at 490.  Here, jurors found beyond a reasonable doubt that petitioner committed three lewd and lascivious acts against two different victims.  CT 632, 639, 641.  This was all the jury needed to find to satisfy Apprendi.

### 3. "Substantial Sexual Contact"

Petitioner's last claim regarding his sentence is premised upon the fact that jurors were instructed to determine whether petitioner engaged in "substantial sexual conduct."  Pet. at

30-33.⁶ The court need not address this claim, however, because the fact that jurors were instructed to determine whether petitioner engaged in "substantial sexual conduct" did not affect the verdicts in any way, as "substantial sexual conduct" was not an element of any possible sentence enhancement. See Op. at 36-37. It appears the "substantial sexual conduct" instruction was given in error, but any error was harmless.

### D. Insufficiency Of Evidence

Petitioner's last claim is that there was insufficient evidence presented at trial to support several of his convictions. Pet. at 35-39. In Jackson v. Virginia, 443 U.S. 307, 319 (1979), the Supreme Court held the relevant question with respect to sufficiency of evidence claims arising under the Constitution is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.)

#### 1. "Tent Game"

In Counts 2, 3, 10, 12 and 13, petitioner was charged with attempting lewd and lascivious acts in violation of California Penal Code §§ 21(a) and 288(a). CT 468-469, 472-473. In Count 9 petitioner was charged with committing a lewd and lascivious act in violation of California Penal Code § 288(a). CT 471-472. All of these counts arose from the "tent games" described above. Petitioner asserts the evidence presented at trial is insufficient to sustain the convictions on these counts.

First, petitioner claims that K.G.'s testimony regarding the "tent games" was not credible because K.G. made and later retracted an allegation that petitioner put his penis in E.G.'s mouth. Pet. at 36-37. Assessment of the credibility of a witness is generally beyond the scope of

---

⁶ Petitioner also asserts "the jury, then, was never instructed to find the fact of a multiple victim circumstance as to counts 8, 14, and 15." Pet. at 32-33. Petitioner fails to point to anything suggesting this fact, by itself, constitutes a violation of his Constitutional rights. To the extent petitioner complains that his sentence was not properly supported by factual findings made by the jury, the court's recommended remand for resentencing on counts 8, 14 and 15 would provide a remedy.

habeas review, <u>Bruce v. Terhune</u>, 376 F.3d 950, 957 (9th Cir. 2004), and petitioner fails to present good cause to depart from that rule here.

Second, petitioner asserts the evidence regarding the "tent game" was insufficient because the conduct attributed to petitioner was significantly different than any of the other conduct alleged:

> All the other counts, except the bath incident which was highly suspect also, involved appellant's acts directed toward his touching of the children; they did not involve acts by appellant that would have caused the children to touch him. Moreover, the other acts were straightforward; they did not involve any "game" or subterfuge.

Pet. at 37.

Petitioner's arguments here would have been appropriate in closing argument as a comment on the evidence presented. However, the arguments do not provide an adequate basis for finding that jurors were irrational in finding petitioner guilty beyond a reasonable doubt for the offenses committed during the "tent games." While the "tent games" were different in certain respects from some of the other crimes charged, that fact adds little if anything to determining whether the "tent games" actually happened.

Third, petitioner claims there was no evidence to corroborate the testimony of K.G.; E.G. denied any participation in the "tent games" and H.G. described a different game in which the participants were clothed. Pet. at 37. Essentially, this is a challenge to the credibility of K.G. and thus generally beyond the scope of habeas review, with no reason to depart from the general rule in this instance. <u>Bruce</u>, 376 F.3d at 957.

### 2. Bathtub Incident

In Counts 4, 11 and 16, petitioner was charged with committing lewd and lascivious acts upon E.G., K.G. and H.G. in violation of California Penal Code section 288(a), with the acts arising out of the bathtub incident described above. CT 469-470, 472, 474. With respect to Count 4, petitioner claims that the evidence presented to the jury was not sufficient to

sustain his conviction because there was not sufficient evidence to establish that petitioner touched K.G. with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of petitioner or K.G. Pet. at 37-38. See CT 584 (jury instruction); Cal. Penal Code § 288(a); People v. Martinez, 11 Cal.4th 434, 453 (1995). With respect to E.G. and H.G. petitioner claims the evidence does not establish there was any touching.

The California Court of Appeal addressed this claim as follows:

> Here H.G. testified she took a bath with defendant when she was three years-old, which would have been in 2001. E.G. and K.G. testified they were all in the bathtub together, and K.G. testified defendant's foot touched him. From this evidence the jury could reasonably find defendant was naked in the tub with three children, two of whom were old enough to bathe themselves, and he had committed other lewd and lascivious acts on these three children and others. These circumstances raise a strong inference (1) that defendant acted with lewd intent and (2) given the tight fit of three children and one adult in a bathtub, that he necessarily touched all the children. The evidence is therefore sufficient to support the verdicts.

See Op. at 27. Petitioner does not disagree with the Court of Appeal's summary of the evidence presented.

The court finds that the Court of Appeal's rejection of petitioner's sufficiency of the evidence claim concerning the bathtub incident is not based upon an unreasonable determination of the facts presented at trial. Furthermore, the decision is not at odds with any Supreme Court precedent. As suggested by the Court of Appeal, a rational trier of fact could have found the contested elements of lewd and lascivious conduct were proved beyond a reasonable doubt.

### 3. "Substantial Sexual Conduct"

In Count 15, petitioner was charged with committing a lewd and lascivious act upon H.G. in violation of California Penal Code section 288(a). CT 474; CT 641 (verdict form). Petitioner claims his conviction on Count 15 must be reversed because there was insufficient evidence to establish that petitioner engaged in "substantial sexual conduct" with H.G. Pet. at

38-39. However, as indicated above "substantial sexual conduct" is not an element of lewd and lascivious conduct in California, an element of any other crime charged, nor was it used as a basis for enhancing petitioner's sentence. CT 642. For these reasons, plaintiff's claim regarding Count 15 should be rejected.

IV. Conclusion

For the foregoing reasons, the court will recommend that petitioner's application for writ of habeas corpus be granted to the extent petitioner requests that his sentences on counts 8, 14 and 15 be vacated. The court will recommend that the application be denied in all other respects.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be granted in part and denied in part as follows:

    A. Granted to the extent petitioner requests that his sentences on counts 8, 14 and 15 be vacated; and

    B. Denied in all other respects.

2. This matter be remanded to the Superior Court of Yolo County for re-sentencing consistent with the findings and recommendations made herein.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

/////
/////
/////
/////

1 shall be served and filed within fourteen days after service of the objections. The parties are
2 advised that failure to file objections within the specified time may waive the right to appeal the
3 District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
4 DATED: May 12, 2010.

_____
U.S. MAGISTRATE JUDGE

cox2107.157(2)